IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NEIL L. SARSFIELD and SHELLEY SARSFIELD**, <br> Plaintiffs <br> v. <br> **CITIMORTGAGE, INC. s/b/m to ABN AMRO MORTGAGE GROUP, INC.** <br> Defendant | **CIVIL NO. 1:09-CV-00835** |

# **M E M O R A N D U M**

Before the court is Defendant Citimortgage, Inc.'s ("Citimortgage") motion to dismiss Plaintiffs Neil and Shelly Sarsfield's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. The parties have briefed the issues, and the matter is ripe for disposition. For the reasons that follow, the court will grant in part and deny in part Defendant's motion to dismiss, and will grant Plaintiffs leave to file an amended complaint.

I. **Background**

    A. **Facts**

The following facts are taken from Plaintiffs' complaint and the attachments thereto. Plaintiffs are residents of Adams County, Pennsylvania who, on November 2, 2007, purchased a home located at 3125 Emmitsburg Road,

Gettysburg, Pennsylvania, through a mortgage loan issued by ABN Amro Mortgage Group, Inc. ("ABN Amro"). Defendant is the successor by merger to ABN Amro.[1]

Plaintiffs' decision to purchase this house was based on the Initial Escrow Account Disclosure Statement (the "initial disclosure") provided by Defendant which estimated their monthly mortgage payments as $3,053.37 per month. Of this amount, $524.19 per month would be placed into escrow to pay private mortgage insurance and real estate taxes on the property, and the rest would be applied to principal and interest. The initial disclosure estimated the yearly school taxes to be $1,577.88, and the yearly city and county taxes to be $546.82. Thus, the total real estate tax estimate was $2,124.70 per year.

On July 7, 2008, after they had purchased the house, Plaintiffs received a new Escrow Account Disclosure Statement from Defendant (the "subsequent disclosure"). The subsequent disclosure revealed that the yearly school tax was actually $4,143.08, and the yearly city and county taxes totaled $1,195.97. Thus, according to the subsequent disclosure, the total taxes were $5,339.05 per year, a difference of $3214.35 from the initial disclosure. The subsequent disclosure also revealed a total escrow shortage of $6,632.74 due to the initial disclosure's incorrect estimate of the applicable taxes. All of this caused Plaintiffs' monthly mortgage payments to increase from $3,053.37 per month to $3,878.24 per month.

Plaintiffs state that had they been provided with a more accurate estimate of their yearly tax obligations they would not have taken out the loan or

---

[1] At this stage of the proceedings, Citimortgage has not contested liability for the actions or inactions of ABN Amro who it succeeded by merger. Accordingly, for the purposes of disposing of Defendant's motion to dismiss, the court will not make a distinction between the actions or inactions of Defendant or ABN Amro. Instead, the court will refer to them collectively as Defendant.

purchased the house, and would not have incurred various expenditures in connection with the property. Plaintiffs raise two claims in their complaint. First, they assert that Defendant violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the federal regulations implementing RESPA, 24 C.F.R. §§ 3500.7(c)(2) and 3500.17(g)(1)(i) and (k), because it did not conduct an escrow account analysis to reasonably estimate the amount of money that was needed in escrow. Second, Plaintiffs aver that Defendant was negligent when it provided them with the grossly underestimated initial disclosure. Specifically, Plaintiffs state that Defendant owed them a duty to use reasonable care in servicing the mortgage, including providing a reasonable estimate of the escrow expenses, and that they breached this duty causing them damages. Plaintiffs contend that this duty arose from the requirements of RESPA, as well as from the fact that Defendant assumed a special relationship with Plaintiffs. Plaintiffs seek actual and punitive damages for the alleged violations of RESPA and for Defendant's alleged negligence.

### B. Procedural History

Plaintiffs filed their complaint on May 4, 2009. (Doc. 1.) Defendant filed its motion to dismiss, (Doc. 9), on July 6, 2009. Plaintiffs filed their brief in opposition to the motion to dismiss on July 21, 2009. No reply brief has been filed. The motion is now ripe for disposition.

## II. Legal Standard

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Phillips*, 515 F.3d 224, 233 (3d Cir. 2008). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *see also Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and

matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.      Discussion**

Defendant seeks dismissal of Plaintiffs' complaint in its entirety. It argues that Plaintiffs' RESPA count should be dismissed because there are inadequate facts pled to support a claim, and Plaintiffs' own documents reveal that the appropriate disclosures were made in connection with the loan. As for Plaintiffs' negligence claim, Defendant argues that it should be dismissed because there are insufficient facts pled demonstrating a duty on behalf of Defendant, and

5

because there was no causation between any conduct by Defendant and Plaintiffs' claimed damages. Defendant also argues that Plaintiffs' negligence claim should be barred by the gist of the action doctrine. Alternatively, Defendant argues that if Plaintiffs' claims survive then their punitive damages claims must fail because (1) RESPA does not authorize punitive damages, and (2) there are insufficient facts supporting willful, wanton, or malicious conduct. The court will address each of these in turn.

### A. RESPA

Defendant asserts generally, that Plaintiffs have failed to state a RESPA claim because there are insufficient facts supporting their entitlement to relief. The crux of Defendant's argument appears to be that since the disclosures were timely made and were clearly labeled only as estimates, the fact that they may have been inaccurate is immaterial and Plaintiffs should not have relied on those estimates in deciding whether to purchase the house. In contrast, Plaintiffs argue that RESPA imposes an obligation upon lenders like Defendant to conduct an escrow analysis and provide an estimate of taxes that reasonably anticipates those items to be paid during the escrow account computation year, and Defendant's failure to do so renders it liable pursuant to 12 U.S.C. § 2614. Unfortunately, Plaintiffs' complaint is not a model of clarity concerning the substantive provisions of RESPA that they allege Defendant violated. To explain the confusion, the court will highlight a few provisions of Plaintiffs' complaint that are less than clear.

First, in Paragraph 16 of their complaint, Plaintiffs assert that Defendant is liable under 12 U.S.C. § 2614 for violations of 12 U.S.C. § 2605, and in Paragraph 17 Plaintiffs specifically mention § 2605(g). (Doc. 1, Compl., ¶¶ 16-

17.) However, it is not clear how the provisions of § 2605(g) are relevant to the factual allegations made by Plaintiffs. That sections states:

> **Administration of Escrow Accounts.** If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

12 U.S.C. § 2605(g). Although Plaintiffs do state in Paragraph 20 of their complaint that Defendant failed to properly make timely escrow payments, they provide no factual support for this allegation. Instead, all of the facts in the complaint surround Defendant's alleged failure to conduct an initial escrow analysis and/or provide a tax estimate that realistically estimated the annual property taxes for this home. As the Supreme Court made clear in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to state a cause of action. 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). Instead, Plaintiffs must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, to the extent that Plaintiffs are asserting a cause of action for a breach of § 2605(g) and the alleged failure of Defendant to make timely escrow disbursements, they must allege some facts to support this allegation. They have not done so here, thus, their complaint is deficient and must be dismissed. However, because Plaintiffs deficiencies can possibly be cured with additional factual allegations, the court will grant Plaintiffs leave to file an amended complaint to provide sufficient facts which plausibly give rise to a cause of action under § 2605.

Second, in addition to § 2605(g), Plaintiffs' complaint alleges that Defendant violated various sections of the regulations implemented pursuant to RESPA. For instance, Plaintiffs allege that Defendant failed to properly conduct an escrow account analysis to determine the amount that they were required to deposit into their escrow account in violation of 24 C.F.R. § 3500.17(c)(2).[2] Additionally, Plaintiffs' complaint alleges that Defendant violated 24 C.F.R. § 3500.17(g)(1)(i)[3]

---

[2]This section reads:

(2) *Escrow analysis at creation of escrow account.* Before establishing an escrow account, the servicer must conduct an escrow account analysis to determine the amount the borrower must deposit into the escrow account (subject to the limitations of paragraph (c)(1)(i) of this section), and the amount of the borrower's periodic payments into the escrow account (subject to the limitations of paragraph (c)(1)(ii) of this section). In conducting the escrow account analysis, the servicer must estimate the disbursement amounts according to paragraph (c)(7) of this section. Pursuant to paragraph (k) of this section, the servicer must use a date on or before the deadline to avoid a penalty as the disbursement date for the escrow item and comply with any other requirements of paragraph (k) of this section. Upon completing the initial escrow account analysis, the servicer must prepare and deliver an initial escrow account statement to the borrower, as set forth in paragraph (g) of this section. The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists and must make any adjustments to the account pursuant to paragraph (f) of this section.

24 C.F.R. § 3500.17(c)(2).

[3]This section reads:

(g) *Initial escrow account statement*.

(1) Submission at settlement, or within 45 calendar days of settlement. As noted in § 3500.17(c)(2), the servicer shall conduct an escrow account analysis before establishing an escrow account to determine the amount the borrower shall deposit into the escrow account, subject to the limitations of § 3500.17(c)(1)(I). After conducting the escrow account analysis for each escrow account, the servicer shall submit an initial escrow account statement to the borrower at settlement or within 45 calendar days

(continued...)

8

by failing to provide an initial escrow account statement providing a reasonable estimate of the taxes, insurance premiums, and other charges that Defendant should have reasonably anticipated.

Plaintiff's complaint seems to suggest that these regulations relate to a lender's obligations under § 2605 of RESPA. While it is clear that § 2605(j)(3) required the Secretary of Housing and Urban Development to promulgate regulations, and those contained in 24 C.F.R. § 3500.17(c)(2) and 3500.17(g)(1)(i) were promulgated pursuant to that power, these sections of the regulations detailing the preparation and delivery of an initial escrow account statement relate to § 2609 of RESPA rather than § 2605. Specifically, 24 C.F.R. § 3500.17(m)(1) states:

> (m) *Penalties*. (1) A servicer's failure to submit to a borrower an initial or annual escrow account statement meeting the requirements of this part shall constitute a violation of section 10(d) of RESPA (12 U.S.C. 2609(d)) and this section. For each such violation, the Secretary shall assess a civil penalty of 75 dollars ($75), except that

---

[3](...continued)
of settlement for escrow accounts that are established as a condition of the loan.

> (i) The initial escrow account statement shall include the amount of the borrower's monthly mortgage payment and the portion of the monthly payment going into the escrow account and shall itemize the estimated taxes, insurance premiums, and other charges that the servicer reasonably anticipates to be paid from the escrow account during the escrow account computation year and the anticipated disbursement dates of those charges. The initial escrow account statement shall indicate the amount that the servicer selects as a cushion. The statement shall include a trial running balance for the account.

24 C.F.R. § 3500.17(g)(1)(I).

9

> the total of the assessed penalties shall not exceed $130,000 for any one servicer for violations that occur during any consecutive 12-month period.

24 C.F.R. § 3500.17(m)(1). This provision makes it clear that section 3500.17(c)(2)—dealing with the establishment of an escrow account—and section 3500.17(g)(1)(i)—dealing with the contents of the initial escrow account statement—both relate to § 2609 of RESPA rather than § 2605. Plaintiffs have not attempted to assert a cause of action pursuant to § 2609 of RESPA nor could they as a majority of circuits have determined that there is no private right of action for violations of § 2609. *See Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357 (11th Cir. 2006)(no private right of action under § 2609 of RESPA); *Louisiana v. Litton Mort. Co.*, 50 F.3d 1298 (5th Cir. 1995)(same); *Allison v. Liberty Sav.,* 695 F.2d 1086 (7th Cir. 1982)(same); *but see Vega v. First Fed. Sav. & Loan Ass'n,* 622 F.2d 918 (6th Cir. 1980)(finding that RESPA creates a private right of action for violation of § 2609 notwithstanding the absence of an express provision). Although the Sixth Circuit has concluded that an implied private right of action exists for violations of § 2609, this court is not convinced that the structure of the statute supports this reasoning. Section 2605, 2607, and 2608 each contain an explicit private right of action, whereas § 2609 does not. *See* 12 U.S.C. §§ 2605(f), 2607(d), and 2608(b). The court is not convinced that Congress would have made explicit a private right of action in the sections immediately preceding § 2609, but simply implied a private right of action for the remainder of the statute. Thus, to the extent that Plaintiffs are indirectly asserting a claim for a violation of § 2609, their cause of action fails as a matter of law.

However, because it is unclear how Plaintiffs believe that the regulations they cite impact their claim under § 2605, and given that Plaintiffs will be permitted leave to file an amended complaint to assert additional facts supporting their claims under § 2605, the court will allow Plaintiffs the opportunity to clarify how § 3500.17(c)(2) and § 3500.17(g)(1)(i) relate to those claims. If Plaintiffs are asserting that §§ 3500.17(c)(2) and 3500.17(g)(1)(i) create a violation of RESPA independent of § 2609 they must allege with some particularity the nature of this cause of action.

Plaintiffs' other RESPA-related claims suffer from the same ambiguities. For instance, Plaintiffs allege that Defendant failed to provide them with a reasonable good faith estimate of the amounts required to be placed into their escrow account in violation of 24 C.F.R. § 3500.7 and Appendix C to 24 C.F.R. § 3500. These sections of the regulations correspond directly with 12 U.S.C. § 2604(c), which imposes a duty upon lenders to provide a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely to incur in connection with the settlement of his or her loan. Like § 2609, § 2604 does not contain an explicit or implied private right of action. *See Collins v. FMHA-USDA*, 105 F.3d 1366 (11th Cir. 1997); *Brophy v. Chase Manhattan Mortg. Co.*, 947 F. Supp. 879 (E.D. Pa. 1996). Thus, to the extent that Plaintiffs attempt to allege a cause of action pursuant to § 2604 their claims fail as a matter of law. However, if Plaintiffs are asserting that 24 C.F.R. § 3500.7 and Appendix C to § 3500 create an independent violation of RESPA not tied to § 2604 they must allege with some particularity the nature of this cause of action.

11

In summary, the court will grant Defendant's motion to dismiss Plaintiffs' RESPA claims. To the extent that Plaintiffs' claims arise under §§ 2604 or 2609 they fail as a matter of law and no amendment will cure this failure. However, to the extent Plaintiffs assert that § 3500.7, Appendix C to § 3500.7, § 3500.17(c)(2), or § 3500.17(g)(1)(i) of the regulations implementing RESPA give rise to causes of action separate from either § 2604 of § 2609, they will be permitted to amend their complaint to allege with some particularity the nature of their claims. Furthermore, Plaintiffs will also be permitted to file an amended complaint to state facts which plausibly give rise to a cause of action under § 2605.

### B. Negligence

Plaintiffs must prove four elements to establish an action in negligence: 1) a duty or obligation to conform to a standard of conduct recognized by law; 2) a breach of that duty by the defendant; 3) a causal connection between the defendant's breach of duty and the resulting injury or harm; and 4) injury or harm suffered by the plaintiff. *See Morena v. S. Hills Health System*, 462 A.2d 680, 684 n. 5 (Pa. 1983) (citing Prosser, *Law of Torts*, § 30 at 143 (4th ed. 1971)). Here, it is the first, second, and third elements that Defendant believes Plaintiffs cannot establish. Specifically, Defendant asserts that Plaintiffs have failed to allege that Defendant owed them a duty of care, and, even assuming a duty of care, that Plaintiffs have failed to allege sufficient facts demonstrating a breach of that duty and a causal link between Defendant's conduct and the harm caused to Plaintiffs. The court will address each of these in turn.

### 1. **Duty of Care**

In their complaint, Plaintiffs assert generally that Defendant owed them two distinct duties. First, Plaintiffs assert that they were owed a duty of "reasonable care in servicing the[ir] mortgage, including but not limited to providing a reasonable estimate of the escrow expenses, as evidenced by the statutory provisions contained in, and the regulations incorporated as part of [RESPA]." (Doc. 1, Compl. ¶ 25.) Second, Plaintiffs assert that Defendant owed them a tort duty to use reasonable care in serving the mortgage "arising from (a) the mortgage contract and/or (b) from the relationship between Amro and [Plaintiffs], in light of the gravity of foreseeable harm to [Plaintiffs] if Amro failed to use such reasonable care, and the minimal burden for Amro to have used such reasonable care." (*Id.* ¶ 26.)

The court finds that these allegations are sufficient to plausibly assert that Defendant owed Plaintiffs a duty of care. Plaintiffs' first allegation is that Defendant's predecessor violated RESPA, and therefore is negligent *per se*. The concept of negligence *per se* establishes the elements of duty and breach of that duty where an individual violates a statute designed to prevent a public harm. *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058 (Pa. Super. Ct. 2003) (citing *J.E.J. v. Tri-County Big Brothers/Big Sisters*, 692 A.2d 582, 585 (Pa. Super. Ct. 1997); *see also White by Stevens v. Se. Pa. Transp.*, 518 A.2d 810, 816. (Pa. Super. Ct. 1986) (holding that violation of a statute may serve as the basis for negligence *per se*). While it is yet to be determined whether Defendant violated RESPA, at this stage of the proceedings these allegations are sufficient to survive a motion to dismiss and put Defendant on notice that it must defend against a claim of negligence *per se*.

Plaintiffs' second allegation—a duty arising from the contract between the parties or because of a special relationship between the parties—is also sufficient to plausibly assert that Defendant owed Plaintiffs a duty. Here, the allegations by Plaintiffs are not that Defendant breached its duty by completely failing to perform, but rather, that it breached its duty by unreasonably performing the initial escrow account analysis. Moreover, while at this stage it is premature for the court to conclude that a special relationship in fact existed between these parties, Plaintiffs' allegations that such a duty did exist is sufficient to "raise a right to relief above the speculative level" such that Plaintiffs' claim is "plausible on its face." *Tombly*, 550 U.S. at 555. This is particularly true given the seemingly unequal bargaining power between these parties. Thus, the court finds that Plaintiffs' complaint sufficiently pleads the existence of duty owed by Defendant to Plaintiffs.[4]

## 2. **Breach and Causation**

Defendant asserts that even if it owed Plaintiffs a duty of care, that it met that duty because the "*appropriate* escrow disclosures and settlement costs were

---

[4] Defendant also asserts that the "gist of the action" doctrine provides an independent basis for the court to dismiss Plaintiffs' negligence claims. The "gist of the action" doctrine prohibits Plaintiffs from transforming breach of contract causes of action into tort causes of action. *See Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. Ct. 2003). Here, however, Plaintiffs do not assert a contract cause of action. To the contrary, Plaintiffs allege that Defendants violated RESPA, a federal statute, and that in so doing they also breached a common law duty of care making them liable in negligence. While Plaintiffs mention that a potential source of Defendant's duty arose from the contract, this allegation does not transform the case into one for beach of contract. *See Groade v. Mutual Fire Ins. Co.,* 623 A.2d 933, 935 (Pa. Commw. Ct. 1993)(allowing a tort claim to proceed when the wrong ascribed to the defendant is the gist of the action, and the contract is merely collateral); *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 208 (3d Cir. 1995) ("[I]f the harm suffered by the plaintiff would traditionally be characterized as a tort, then the action sounds in tort and not in contract."). The gist of this case is the alleged misfeasance of Defendant, and Plaintiffs' allegation that this misfeasance violated a federal statutory and common law duty of care. The contract between the parties is entirely collateral to the cause of action asserted by Plaintiffs. Plaintiffs are masters of their complaint, and merely because they mention the word "contract" does not mean that the action itself sounds in contact.

made to them within the relevant time-frames." (Doc. 8, Br. in Supp. of Mot. to Dismiss, at 17 of 22. (emphasis added).) Of course, whether this is true is what this case is all about. Plaintiffs' complaint does not allege that the disclosures were not made; rather, Plaintiffs assert that they were not *appropriately* made in compliance with RESPA and Defendant's duty of care. This disagreement is to be expected, but at this early stage of the proceedings, taking Plaintiffs' allegations as true, the court finds that Plaintiffs have sufficiently pled a breach of a duty of care.

The same is true for the causation prong of Plaintiffs' negligence claim. Defendant asserts that there can be no causation as a matter of law based mainly on its assumption that it complied with its duties, but also based on the argument that Plaintiffs would have purchased the house even if the disclosures would have been accurate. While this may be Defendant's theory of the case, it is in contrast to the allegations made by Plaintiffs in their complaint. In Paragraph 12 of their complaint, Plaintiffs unequivocally assert that "[h]ad Amro provided [them] with a reasonable estimate of the monthly payments that would be required . . . rather than underestimating the payments by over $800.00 per month, [they] would not have incurred the mortgage debt." (Doc. 1, Compl., ¶ 12.) For purposes of ruling on Defendant's motion to dismiss, the court accepts this averment of fact as true. As such, the court finds that Plaintiffs have adequately pled that Defendant's predecessor's conduct caused the harm of which Plaintiffs complain.

### 3. Summary

The court finds that Plaintiffs' complaint sufficiently sets forth facts that raise Plaintiffs' negligence claim above "the speculative level," such that

Plaintiffs could plausibly prevail on this claim at trial. Accordingly, the court will deny Defendant's motion to dismiss Plaintiffs' negligence claim.

### C. **Punitive damages claims**

Defendant asserts that if the court permits Plaintiffs' claims to go forward that their request for punitive damages should be stricken. As to Plaintiffs' RESPA count, Defendant argues the punitive damages are not authorized or provided for by RESPA. As to Plaintiffs' negligence count Defendant argues that Plaintiffs have not pled sufficient facts demonstrating that Defendants' conduct was outrageous, willful, and wanton. The court will address each of these in turn.

#### 1. **RESPA**

A review of RESPA reveals that punitive damages are not authorized by the statute. Only sections 2605, 2607 and 2608 of RESPA contain private rights of action, and none of these authorize punitive damages. *See* 12 U.S.C. § 2605(f) (authorizing actual damages, and, in the case of a pattern and practice of noncompliance statutory damages not to exceed $1000); 12 U.S.C. § 2607(d)(authorizing up to three times the amount of excessive settlement services paid); and 12 U.S.C. § 2608(b)(authorizing damages of up to three times the amount of charges made for title insurance). Accordingly, to the extent that Plaintiffs seek punitive damages for violations of RESPA their claims fail as a matter of law.[5]

---

[5]The court recognizes that RESPA does authorize enhanced statutory damages and trebling of certain actual damages. To the extent that Plaintiffs can demonstrate a violation of the relevant sections of RESPA, the court will take into consideration these enhanced damages. However, RESPA does not permit punitive damages in the traditional sense.

### 2. Negligence claims

Unlike Plaintiffs statutory claims, however, punitive damages are permitted for negligence claims if the conduct of the Defendant is based on an "evil motive" or the Defendant is "reckless[ly] indifferen[t] to the rights of others." *Restatement (Second) of Tort* § 908(2). Here, Plaintiffs' complaint pleads both a factual and legal basis for punitive damages. Plaintiffs allege that Defendant acted with actual malice and ill will in that Defendant recklessly and deliberately disregarded its statutory duties. (*See* Doc. 1 ¶¶ 22, 28.) For pleading purposes this is sufficient to allow Plaintiffs' claim for punitive damages to move forward.

## IV. Conclusion

In accordance with the foregoing, the court will grant in part and deny in part Defendant's motion to dismiss. The court will grant Defendant's motion to dismiss Plaintiffs' RESPA claims, but permit Plaintiffs an opportunity to file an amended complaint setting forth facts which would plausibly state a claim for a violation of RESPA. The court will deny Defendant's motion as it relates to Plaintiffs' negligence claims. The court will issue an appropriate order.

       s/Sylvia H. Rambo
       United States District Judge

Dated: October 21, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**NEIL L. SARSFIELD and
SHELLEY SARSFIELD**,

    **Plaintiffs**

  v.

**CITIMORTGAGE, INC. s/b/m to
ABN AMRO MORTGAGE GROUP,
INC.**

    **Defendant**

**CIVIL NO. 1:09-CV-00835**

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

1) Defendant's motion to dismiss, (Doc. 9), is **GRANTED IN PART AND DENIED IN PART** as follows:

    a) Defendant's motion is **GRANTED WITHOUT PREJUDICE** with regard to Plaintiffs' claims in Count I under the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. § 2601 *et seq*. Plaintiffs are granted leave to file an amended complaint within twenty days from the date of this order articulating a factual basis for its cause of action under RESPA and the regulations found at 24 C.F.R. § 3500 *et seq*. If Plaintiffs do not file an Amended Complaint within twenty days, this case will proceed on Plaintiffs' negligence claims only.

    b) Defendant's motion is **GRANTED WITH PREJUDICE** to the extent that Plaintiffs' claims are based on violations of either 12 U.S.C. § 2604 or 12 U.S.C. § 2609 as neither of these sections contains an express of implied private right of action.

c) Defendant's motion is **GRANTED WITH PREJUDICE** as to Plaintiffs' claims for punitive damages pursuant to RESPA.

d) Defendant's motion is **DENIED** in all other respects.

                                                                     s/Sylvia H. Rambo
                                                                      United States District Judge

Dated: October 21, 2009.