IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEIL L. SARSFIELD and
SHELLEY SARSFIELD,                    :
                                      :
            Plaintiffs                :  CIVIL NO. 1:09-CV-00835
                                      :
     v.                               :
                                      :
CITIMORTGAGE, INC. s/b/m to           :
ABN AMRO MORTGAGE GROUP,              :
INC.                                  :
                                      :
            Defendant                 :

## M E M O R A N D U M

Before the court is Defendant Citimortgage, Inc.'s ("Citimortgage")
motion to dismiss Plaintiffs Neil and Shelly Sarsfield's amended complaint pursuant
to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. (Doc. 36.)
Specifically, Citimortage asserts that Plaintiffs' state law claims are barred either by
the gist of the action doctrine or the economic loss doctrine, and that Plaintiffs'
federal Truth-in-Lending claim is barred by the applicable statute of limitations. The
parties have briefed the issues, and the matter is ripe for disposition. For the reasons
that follow, the court will grant Defendant's motion to dismiss but will permit
Plaintiffs' leave to amend their Truth-in-Lending claim.

## I.       Background

### A.     Facts

The following facts are taken from Plaintiffs' amended complaint and
the attachments thereto. Plaintiffs are residents of Adams County, Pennsylvania,
who, on November 2, 2007, purchased a home located at 3125 Emmitsburg Road,

Gettysburg, Pennsylvania, through a mortgage loan issued by ABN Amro Mortgage Group, Inc. ("ABN Amro"). Defendant is the successor by merger to ABN Amro.[1]

Plaintiffs' decision to purchase this house was based, in part, on the Initial Escrow Account Disclosure Statement (the "initial disclosure") provided by Defendant, which estimated their monthly mortgage payments as $3,053.37 per month. Of this amount, $524.19 per month would be placed into escrow to pay private mortgage insurance and real estate taxes on the property, and the rest would be applied to principal and interest. The initial disclosure estimated the yearly school taxes to be $1,577.88, and the yearly city and county taxes to be $546.82. Thus, the total real estate tax estimate was $2,124.70 per year.

On July 7, 2008, after they had purchased the house, Plaintiffs received a new Escrow Account Disclosure Statement from Defendant (the "subsequent disclosure"). The subsequent disclosure revealed that the yearly school tax was actually $4,143.08, and the yearly city and county taxes totaled $1,195.97. Thus, according to the subsequent disclosure, the total taxes were $5,339.05 per year, a difference of $3,214.35 from the initial disclosure. The subsequent disclosure also revealed a total escrow shortage of $6,632.74 due to the initial disclosure's incorrect estimate of the applicable taxes. All of this caused Plaintiffs' monthly mortgage payments to increase from $3,053.37 per month to $3,878.24 per month.

Plaintiffs assert that had they been provided with a more accurate estimate of their yearly tax obligations they would not have incurred the mortgage

---

[1] At this stage of the proceedings, Citimortgage has not contested liability for the actions or inactions of ABN Amro who it succeeded by merger. Accordingly, for the purposes of disposing of Defendant's motion to dismiss, the court will make no distinction between the actions or inactions of Defendant or ABN Amro. Instead, the court will refer to them collectively as Defendant.

debt or purchased the house, and would not have incurred various expenditures in connection with the property. The mortgage was for $385,000. (*See* Doc. 49-2.) Plaintiffs estimate that their other expenditures connected with the property total $130,000.

**B.** **Procedural History**

Plaintiffs filed their complaint on May 4, 2009. (Doc. 1.) Defendant filed its motion to dismiss, (Doc. 9), on July 6, 2009. After briefing, on October 21, 2009, the court issued an order granting in part and denying in part Defendant's motion. (Doc. 15.) Specifically, the court dismissed Plaintiffs' count under the Real Estate Settlement Procedures Act, ("RESPA"), 12 U.S.C. § 2601 *et. seq*., but granted Plaintiffs leave to amend this count. The court denied Defendant's motion to dismiss Plaintiffs' negligence count.

At the request of the parties, this case was sent to a United States Magistrate Judge for a settlement conference, and Plaintiffs' obligation to file an amended complaint was stayed pending settlement discussions. The case did not settle. Plaintiffs filed their amended complaint on January 25, 2010. (Doc. 33.)

Plaintiffs raise five claims in their amended complaint. First, they reassert a claim for negligence. Specifically, they assert that Defendant owed them a statutory duty to use reasonable care in servicing their mortgage pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the federal regulations implementing RESPA, 24 C.F.R. §§ 3500.7(c)(2), and 3500.17(g)(1)(i) and (k). Plaintiffs also assert that Defendant owed them a tort duty to use reasonable care in servicing the mortgage which arose either from the mortgage contract and/or the relationship between Defendant and Plaintiffs in light

of the gravity of foreseeable harm to Plaintiffs if Defendant failed to use such reasonable care.  Finally, Plaintiffs assert that Defendant had a duty to not issue the loan because Plaintiffs' debt-to-income ratio indicated they could not afford the mortgage.  Plaintiffs allege that these duties were breached when Defendant failed to provide a reasonable estimate of the escrow expenses and when it issued the loan, and that Plaintiffs were damaged as a result.

Second, Plaintiffs assert that Defendant violated the federal Truth-in-Lending Act, ("TILA"), 15 U.S.C. § 1601 *et seq.*, by not providing required disclosures to Plaintiffs at least seven (7) days before consummation of the mortgage.  *See* 15 U.S.C. § 1638(b)(2)(A), (B).

Third, Plaintiffs assert that Defendant committed common law fraud by misrepresenting the amount of their tax and escrow obligations when they knew of, or were recklessly indifferent to, the fact that the initial disclosures were false. Plaintiffs assert that Defendant's misrepresentations were intentional and were designed to induce Plaintiffs to incur the mortgage debt.

Fourth, Plaintiffs assert a claim of negligent misrepresentation based on the same allegations contained in their fraud count.

Finally, Plaintiffs assert that Defendant violated Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 *et seq.*, through its unfair and deceptive initial disclosure that materially misrepresented the amount of taxes Plaintiffs were required to escrow.

On February 8, 2010, Defendant filed its motion to dismiss Plaintiffs' amended complaint.  (Doc. 36.)  Defendant asserts that Plaintiffs' TILA claim is barred by the applicable statute of limitations, and that all of Plaintiffs' state common

law and statutory claims are barred by the gist of the action doctrine, or the economic loss doctrine, or both.

## II.        <u>Legal Standard</u>

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original).) In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.**     **Discussion**

In its October 21, 2009 memorandum and order, the court denied Defendant's motion to dismiss Plaintiffs' negligence claim.  In part, the court reasoned that the gist of the action doctrine was inapplicable to Plaintiffs' case.  In a footnote, the court stated:

> Defendant also asserts that the "gist of the action" doctrine provides an independent basis for the court to dismiss Plaintiffs' negligence claims.  The "gist of the action" doctrine prohibits Plaintiffs from transforming breach of contract causes of action into tort causes of action.  *See Pittsburgh Constr. Co. v. Griffith*, 834 A.2d 572, 581 (Pa.

6

Super. Ct. 2003). Here, however, Plaintiffs do not assert a contract cause of action. To the contrary, Plaintiffs allege that Defendant's violated RESPA, a federal statute, and that in so doing they also breached a common law duty of care making them liable in negligence. While Plaintiffs mention that a potential source of Defendant's duty arose from the contract, this allegation does not transform the case into one for beach of contract. *See Groade v. Mutual Fire Ins. Co.,* 623 A.2d 933, 935 (Pa. Commw. Ct. 1993)(allowing a tort claim to proceed when the wrong ascribed to the defendant is the gist of the action, and the contract is merely collateral); *Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 208 (3d Cir. 1995) ("[I]f the harm suffered by the plaintiff would traditionally be characterized as a tort, then the action sounds in tort and not in contract."). The gist of this case is the alleged misfeasance of Defendant, and Plaintiffs' allegation that this misfeasance violated a federal statutory and common law duty of care. The contract between the parties is entirely collateral to the cause of action asserted by Plaintiffs. Plaintiffs are masters of their complaint, and merely because they mention the word "contract" does not mean that the action itself sounds in contact.

(Oct. 21, 2009 Mem. & Order, Doc. 15 at 14 n.4.)

In its brief in support of its motion to dismiss Plaintiffs' amended complaint, Defendant asserts that the court erred in reaching this conclusion because "nothing in the 'gist-of-the-action' doctrine requires Plaintiff to have asserted a contract claim," instead, the doctrine requires the court to analyze whether the basis of Plaintiffs' claims arises from the mortgage agreement itself or whether it arises from some separate, broad societal duty. (Def.'s Br. in Supp. of Mot. to Dismiss, Doc. 37 at 5.) Defendant requests that the court revisit its decision and determine that Plaintiffs' state law tort and statutory claims are, in fact, barred by the gist of the action doctrine. In the alternative, Defendant asserts that those claims are barred by the economic loss doctrine. Finally, Defendant asserts Plaintiffs' federal TILA

claims are barred by the statute of limitations. The court will address each of these arguments in turn.

## A. Gist of the Action Doctrine

Defendant's counsel asserts that the court erred in deciding that the gist of the action doctrine was inapplicable to Plaintiffs' negligence claims. Indeed, based on the court's review of Plaintiffs' amended complaint, Defendant's motion to dismiss, and the parties briefing, it has become clear that the court did in fact err in not dismissing Plaintiffs' tort claims based upon the gist of the action doctrine. However, the court would be remiss in not mentioning the fact that the issue was insufficiently briefed in the first motion, and that facts were insufficiently clear to allow the court to reach the correct decision. Specifically, it is the language in the mortgage contract itself that the court finds dispositive of the issue; a contract that neither party included in its briefing of Defendant's motion until the court requested it from Defendant.[2] Thus, with the benefit of full briefing, and after having the opportunity to have reviewed the contract between the parties, the court, in contrast

---

[2]The court finds it proper to consider the mortgage contract between the parties without the need to convert Defendant's motion to dismiss to one for summary judgment because a court may consider documents that are integral to the allegations contained in the complaint. *See U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). Furthermore, the mortgage was recorded in the Adams County Recorder of Deeds office, and therefore it is a matter of public record which also may be considered by the court in deciding a 12(b)(6) motion. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.")

to its previous ruling, agrees that Plaintiffs' tort claims are barred by the gist of the action doctrine.[3]

Pennsylvania's gist of the action doctrine is a common law doctrine "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *eToll v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (citing *Bash v. Bell Tel. Co.,* 601 A.2d 825 (Pa. Super. 1992), *rev'd on other grounds by Keefer v. Keefer*, 741 A.2d 808, 812 (Pa. Super. Ct. 1999). Tort actions lie for breaches of duties imposed by law as a matter of social policy, whereas contract actions lie only for breaches of duties imposed by consensual agreements between particular individuals. *Id.* Thus, a claim is limited to a contract claim "when the parties obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Hart v. Arnold*, 884 A.2d 316, 339-40 (Pa. Super. Ct. 2005). On the other hand, if the contract is merely collateral to the wrong described, the existence of a contract does not prevent recovery in tort. *eToll,* 811 A.2d at 14.

Pennsylvania courts have recognized four areas where the gist of the action doctrine precludes recovery in tort: (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or

---

[3]The court sees no reason that its initial decision that the gist of the action doctrine was inapplicable ties the court's hands in ruling on Plaintiffs' amended complaint. After all, it is better to get the decision right the second time around than not at all. *See Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116-17 (stating that the law of the case doctrine "does not limit a federal court's power; rather its directs its exercise of discretion," and does not prohibit revisiting an earlier decision when the "earlier decision was clearly erroneous and would create a manifest injustice.").

where the success of the tort claim is dependent on the success of the breach of contract claim. *Id.* at 19 (citations omitted). Based upon the court's review of Plaintiffs' amended complaint, the statutory provisions at issue, and the relevant case law, the court concludes that the torts allegedly committed by Defendant are inextricably entwined with the mortgage contract between the parties, such that, without the existence of the contract no duties would have arisen.

Here, Plaintiff asserts three common law tort claims: negligence, fraud, and negligent misrepresentation. Each of these claims stems from Plaintiffs' assertion that Defendant failed to reasonably calculate the amount of money that Plaintiffs were required to escrow each month to pay their property taxes. According to the amended complaint, the initial disclosure miscalculated the amount needed by more than $3,000 a year which caused Plaintiffs' loan to be unaffordable.

As to Plaintiffs' negligence claim, they assert that Defendant owed them a duty to provide a reasonable estimate of escrow expenses as evidenced by RESPA in 12 U.S.C. § 2609(c). Plaintiffs also assert that Defendant owed them a more generalized tort duty to use reasonable care in servicing the mortgage which arises either from the mortgage contract and/or from the relationship between Plaintiffs and Defendant in light of the gravity of foreseeable harm to Plaintiffs if Defendant failed to use such reasonable care. Defendant argues that any duty owed to Plaintiffs existed only because of the mortgage contract, which requires an escrow account and cross-references RESPA. Therefore, according to Defendant, the contract is central and inextricable from Plaintiffs' claims and, thus, the gist of the action is one in contract not tort. The court agrees.

The parties' mortgage contract states, in relevant part:

> The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. **Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.**

(Nov. 2, 2007 Mortgage, Doc. 49-2 at 4)(emphasis added). Similarly, section 2609(c) of RESPA states, in relevant part:

> **(c) Escrow account statements**. (1) Initial statement. (A) In general. **Any servicer that has established an escrow account in connection with a federally related mortgage loan** shall submit to the borrower for which the escrow account has been established a statement clearly itemizing the estimated taxes, insurance premiums, and other charges that are reasonably anticipated to be paid from the escrow account during the first 12 months after the establishment of the account and the anticipated dates of such payments.

12 U.S.C. § 2609(c)(1)(A) (emphasis added).

Read together, these provisions impose a duty upon Defendant to provide an escrow statement that reasonably estimates the amount of money that Defendant anticipates paying from the escrow account during the first year after the establishment of the escrow account. Plaintiffs assert that Defendant breached this duty and that the duty arose out of federal statutory law, and/or out of the relationship between the parties. However, the relationship between the parties existed only because of the contract between them. Absent this contract—a federally related mortgage loan—the parties would not have had a relationship and Defendant's obligations under RESPA would never have materialized.

From the court's perspective, it is the language of the contract that resolves this issue. The contract clearly contemplates that Defendant had a contractual obligation to reasonably estimate "the amount of [f]unds due on the basis

11

of current data and reasonable estimates of expenditures of future [e]scrow [i]tems or otherwise in accordance with [a]pplicable [l]aw." (Nov. 2, 2007 Mortgage, Doc. 49-2 at 4). In the absence of this language permitting the creation of an escrow account, all of the more specific requirements imposed by RESPA would not have attached and no such obligations would have existed. Thus, it appears that Plaintiffs' negligence claims arises entirely within the context of the parties' ongoing contractual relationship, and is not merely collateral to that relationship. Accordingly, Plaintiffs' negligence claim (Count I) is barred by the gist of the action doctrine and will be dismissed.

The same is true for Plaintiffs' other torts—fraud (Count III) and negligent misrepresentation (Count IV). Both of these counts are directly related to the underlying contractual rights and obligations of the parties as defined by the loan agreement. Both counts allege that Defendant made knowingly false or misleading statements when it represented the amount of relevant taxes required for escrow, and that these material misrepresentations induced Plaintiffs to incur the mortgage debt. It is clear from the pleadings, however, that the fraud and misrepresentation alleged concerned the performance of contractual duties—i.e., the duty to reasonably estimate "the amount of [f]unds due on the basis of current data and reasonable estimates of expenditures of future [e]scrow [i]tems or otherwise in accordance with [a]pplicable [l]aw." (Nov. 2, 2007 Mortgage, Doc. 49-2 at 4). Because these claims are inextricable from Defendant's contractual obligations they are barred by the gist of the action doctrine. *See Strausser v. PRAMCO, III*, 944 A.2d 761, 767-68 (Pa. Super. Ct. 2008) (finding that claims of negligence, misrepresentation and fraud against a mortgagee, which had broken a promise to forbear on foreclosing on a

mortgaged property, were barred by the gist of the action doctrine where the claims were "directly related to the underlying contractual rights and obligations of the parties as defined by the loan agreements and mortgages between them."); *see also, eToll v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (stating that "courts have **not** carved out a categorical exception to avoid fraud," and instead imposing a case by case determination about "whether the fraud concerned the performance of contractual duties."(emphasis in original)).

For these reasons, the court finds that Plaintiffs' common law tort claims of negligence, negligent misrepresentation, and fraud depend upon the contractual duties imposed by the mortgage contract, and that Plaintiffs are capable of seeking redress of those claims through an action sounding in contract. Thus, these claims are barred by the gist of the action doctrine.[4] The court will not permit Plaintiffs leave to further amend their complaint to reassert any tort claims because doing so would be futile. All of Plaintiffs' tort claims arise from the mortgage contract between the parties and cannot be separated from that contractual relationship.

## B.     Plaintiffs' statutory state consumer protection claim

Neither party separately addresses whether Plaintiffs' claim that Defendant violated Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-1 *et seq*., is barred by the gist of the action doctrine. Nonetheless, the court believes that a distinction exists between this claim and Plaintiffs' common law tort claims.

---

[4]The court will address the application of the gist of the action doctrine to Plaintiff's claims under Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law when it discusses the application of the economic loss rule to that claim in Part III.B., below.

Pennsylvania's Supreme Court has ruled that the UTPCPL should be interpreted in the broadest possible way to protect consumers in the marketplace. *See Commonwealth v. Monumental Properties, Inc.,* 329 A.2d 812, 817 (Pa. 1974) ("[UTPCPL'S] expansive provisions reflect the legislative judgment that unfairness and deception in all consumer transactions must be halted. These sections of the [UTPCPL], in accordance with the legislative intent, are to be liberally construed to effectuate that intent.") Furthermore, subsequent decisions have liberally applied the law to mortgage lending practices. *See e.g., In re Smith,* 866 F.2d 576 (3d Cir. 1989); *Rodriguez v. Mellon Bank*, 218 B.R. 764 (Bankr. E.D. Pa. 1998).

In its review of state and federal cases applying the doctrine, the court has not uncovered support for the proposition suggested by Defendant that Plaintiffs' UTPCPL claim is barred by the gist of the action doctrine. Nor does Defendant convincingly show that Plaintiffs' common law fraud cause of action and its UTPCPL cause of action consist of identical elements, or are subject to identical legal standards, including pleading requirements. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 225 (3d Cir. 2008) (noting that "some authority" supports the proposition that a plaintiff alleging deception, as opposed to fraud, under the catch-all provision of the UTPCPL need not prove all elements of common law fraud, although justifiable reliance must be shown). Plaintiffs' case is brought, among other sections, under the catch-all provision of the UTPCPL, 73 P.S. § 201-2(4)(xxi). Thus, Defendant's arguments as to Plaintiffs' common law claims do not necessarily apply with equal force to Plaintiffs' statutory claim as these claims are separate and distinct. The Court finds no basis to dismiss Plaintiffs' UTPCPL claim under the gist of the action doctrine.

In the alternative, Defendant argues that Plaintiffs' UTPCPL claims are barred by the economic loss doctrine.[5] The economic loss doctrine provides that "no cause of action can be maintained in tort for negligence or strict liability where the only injury was 'economic loss'—that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice,* 126 F.3d 539, 541 (3d Cir. 1997) (citing *Aikens v. Baltimore & Ohio R.R. Co.,* 501 A.2d 277, 279 (1985)). The doctrine developed in the products liability context to prevent tort recovery where the only injury was to the product itself. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858 (1986) (adopting the doctrine in an admiralty products liability case). Within the Third Circuit, it has since been applied in the context of service contracts, *see, e.g.*, *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1272 (M.D. Pa.1990), negligent misrepresentation claims, *see, e.g.*, *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 620 (3d Cir. 1995), and more recently fraud claims and the UTPCPL, *see, e.g., Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir.2002).

In *Werwinski*, the Third Circuit held that Pennsylvania law made no exception to the economic loss doctrine for intentional tort claims and UTPCPL claims. *Id.* at 674. Although Pennsylvania's Supreme Court had yet to address the issue, the Third Circuit predicted that the Pennsylvania Supreme Court would likely apply the doctrine to claims under the UTPCPL. *Id.* at 680. In reaching this conclusion, the Third Circuit relied on two decisions from other states, *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W. 2d 541, 545 (Mich. Ct.

---

[5]Defendant also asserts that Plaintiffs common law tort claims are barred by the economic loss doctrine but the court finds it unnecessary to make this determination because it will dismiss those claims under the gist of the action doctrine.

App. 1995) and *Rich Prod. Corp. v. Kemutec, Inc.*, 66 F. Supp. 2d 937, 977-80 (E.D. Wis. 1999), both of which held that a fraud-in-the-inducement claim is actionable, despite the economic loss doctrine, only if the fraud is extraneous to the alleged breach of contract. The *Werwinski* court explained that where the allegedly fraudulent misrepresentations concerned the subject of a contract, the tort claims are clearly intertwined with, rather than extraneous to, the contract claims. 286 F.3d at 678. Furthermore, "the alleged fraudulent concealment did not cause harms to the plaintiffs distinct from those cause by the breach of contract." *Id*. (citations omitted). Thus, the court held that the economic loss doctrine barred the claim. *Id*.

In reaching its conclusion, the Third Circuit recognized that Pennsylvania courts have expressed a willingness to restrict intentional tort claims that overlap with contract claims, as evidenced by the gist of the action doctrine. *Id*. at 680. Finally, when faced with "two competing yet sensible interpretations of Pennsylvania law," the Court explained that it "should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." *Id.*

Unfortunately, although the court believes that the Third Circuit's interpretation of Pennsylvania law in *Werwinski* was incorrect for the reasons stated by Judge Van Antwerpen, then a district court judge, in *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 275 (E.D. Pa. 2003), the court concludes that it cannot, in good faith, ignore the Third Circuit's pronouncement of Pennsylvania law.

In *O'Keefe*, Judge Van Antwerpen expressly disagreed with *Werwinski* and held that an exception for UTPCPL claims exists under Pennsylvania law. Judge

Van Antwerpen found that the *Werwinski* decision was not in harmony with

Pennsylvania law for several reasons, including:

> (1) In Pennsylvania, common law may not overrule legislative intent and violate a statute; (2) Pennsylvania courts have refused to apply the economic loss doctrine in consumer common law intentional fraud suits; (3) Pennsylvania Courts have allowed treble damage awards in consumer fraud cases pursuant to the UTPCPL without reference to the economic loss doctrine; (4) Pennsylvania courts since *Werwinski* have continued to do so; and (5) the panel based its decision entirely on a U.S. District Court for the Western District of Wisconsin case applying Wisconsin law which is not binding on Pennsylvania courts.

*Id.* at 275. In analyzing this decision, Judge Michael Baylson of the Eastern District

of Pennsylvania offers cogent analysis. In *DeFebo v. Anderson Windows, Inc.*, 654

F. Supp. 2d. 285 (E.D. Pa. 2009), Judge Baylson states:

> The concerns expressed in *O'Keefe* are not without merit. First, several lower Pennsylvania state courts have explicitly held that intentional torts are generally excepted from the economic loss doctrine. *See, e.g., Paola Amico v. Radius Commc'ns*, 2001 WL 1807924, at *3 (Pa. Com. Pl. Jan. 9, 2001) (applying doctrine to fraud claims); *First Republic Bank v. Brand*, 2000 WL 33394627, 50 Pa. D. & C.4th 329, 340-31 (Pa. Com. Pl. Dec. 19, 2000) (applying doctrine to fraudulent misrepresentation claims). Likewise, several cases in lower Pennsylvania courts have subsequently rejected the Third Circuit's prediction that the Pennsylvania Supreme Court would recognize such an exception. *See, e.g., Smith v. Reinhart*, 2004 WL 3092495, 68 Pa. D. & C. 4th 432, 437-38 (Pa. Com. Pl. Sept. 29, 2004); *Grant v. Bridgestone Firestone*, 2002 WL 372941, at *5 (Pa. Com. Pl. Jan.10, 2002).
>
> However, neither of those positions are unanimously supported by the lower state courts. For example, in *Ellenbogen v. PNC Bank*, the state Superior court noted that the doctrine bars recovery from purely economic losses suffered as a result of the defendant's "negligent or otherwise tortious behavior." 731 A.2d 175, 188-89 n. 26 (Pa. Super. 1999) (emphasis added). Furthermore, in *Zwiercan v. General Motors Corp.*, a lower state court

17

> agreed with the Third Circuit in *Werwinski* to the extent
> that the doctrine barred claims under the UTPCPL in some
> cases, though it held that the doctrine did not apply where
> the plaintiff did not otherwise have a valid breach of
> contract claim and was not bringing the tort action in lieu
> of a contract action. 2002 WL 31053838, at *7 (Pa. Com.
> Pl. Sept. 11, 2002). Moreover, as to Judge Van
> Antwerpen's concern about allowing a common law rule to
> modify a statutory right, this Court notes that the parol
> evidence rule, a common law doctrine, has often been
> applied by the Pennsylvania Supreme Court to the
> UTPCPL. *See, e.g.,* [*Toy v. Metro. Life Ins. Co.*, 928 A.2d
> 186, 203-06 (Pa. 2007)]; *Yocca v. Pittsburgh Steelers*, 578
> Pa. 479, 854 A.2d 425, 439 (2004).

*Id.* at 293-94.

In light of the uncertainty expressed by Pennsylvania courts regarding the application of the economic loss rule to the UTPCPL, both before and after *Werwinski*, this court is not in a position to ignore the Third Circuit's prediction of Pennsylvania law despite its reservations about the panel's reasoning. *See id.* at 294 ("[District Court] is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue."); *see also*, *Mansmann v. Tuman*, 970 F. Supp. 389, 402 (E.D. Pa.1997) ("The Third Circuit's interpretation of Pennsylvania law is binding on the district court . . . ."); *Cohen v. Am. Int'l Ins. Co.*, 1996 WL 103793, at *3 (E.D. Pa. March 7, 1996) (Yohn, J.) (explaining that a Third Circuit opinion is binding on the district court in the absence of a contradictory decision from the Third Circuit or Pennsylvania Supreme Court).

Furthermore, although there are no Pennsylvania Supreme Court or Superior Court cases that definitively indicate that the economic loss doctrine bars a claim under the UTPCPL, *see David Pflumm Paving & Excavating, Inc. v. Found. Services Co.* 816 A.2d 1164, 1171 n.2 (Pa. Super. 2003), the Pennsylvania Superior Court, in *Adams v. Copper Beach Townhome Condo.,* 816 A.2d 301 (Pa. Super.

2003), has at least implicitly accepted the Third Circuit's reasoning in *Werwinski.*  In *Copper Beach,* the issue was whether a claim pursuant to Pennsylvania's Storm Water Management Act, 32 P.S. § 680 *et seq.*, ("SWMA"), which was brought by employees of a tire manufacturing plant for lost wages due to their plant's closure from storm water runoff from a neighboring property, was barred by the economic loss doctrine.  The Superior Court cited *Werwinski* favorably and explicitly ruled that the plaintiff's SWMA claim was barred.  In so doing, the Superior Court showed no hesitancy in applying the common law economic loss doctrine to statutory claims, and expressed no complaints about the *Werwinski* court's  application of that doctrine to the UTPCPL.

Accordingly, in light of Pennsylvania's intermediate appellate court's implicit acceptance of the Third Circuit's prediction of the economic loss doctrine's applicability to claims arising under the UTPCPL, as well as the unsettled nature of the case law since *Werwinski* was decided, this court believes that it must follow the Third Circuit's decision and finds that Plaintiffs' UTPCPL, (Count V), claim is barred by the economic loss doctrine because it is interdependent with claims that could arise from the mortgage contract between the parties.  Thus, this claim will be dismissed.  The court will not permit Plaintiffs to amend there UTPCPL claim because amendment would be futile.  This claim is inextricably tied in with the mortgage contract between the parties, a factor that the Third Circuit considered in *Werwinski*, and no amount of artful pleading will permit them to be separated.[6]

---

[6]In an effort to salvage their claims, Plaintiffs argue that they are not merely seeking economic damages but that their complaint also seeks compensation for emotional distress. Because the court will dismiss Plaintiffs' tort claims on the basis of the gist of the action doctrine rather than the economic loss doctrine the court need not decide whether their claim for emotional distress would affect

(continued...)

## C. <u>Truth in Lending Claims</u>

In their amended complaint, Plaintiffs also assert a violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Specifically, Plaintiffs assert that Defendant did not provide disclosures required by 15 U.S.C. § 1638(b)(2)(A) at least seven (7) days before the consummation of the mortgage on November 2, 2007, and also did not provide the disclosures required by § 1638(b)(2)(B). Those sections of TILA require the following:

> (b) Form and timing of disclosures; residential mortgage transaction requirements.
>
> . . .
>
> (2)(A) Except as provided in subparagraph (G), in the case of any extension of credit that is secured by the dwelling of a consumer, which is also subject to the Real Estate Settlement Procedures Act [12 U.S.C. 2601 et seq.], good faith estimates of the disclosures required under subsection (a) of this section shall be made in accordance with regulations of the Board under section 1631(c) of this title and shall be delivered or placed in the mail not later than three business days after the creditor receives the consumer's written application, which shall be at least 7 business days before consummation of the transaction.
>
> (B) In the case of an extension of credit that is secured by the dwelling of a consumer, the disclosures provided under subparagraph (A), shall be in addition to the other disclosures required by subsection (a), and shall–

---

[6] (...continued)
the court's analysis under the economic loss doctrine. Furthermore, because claims for emotional distress are not compensable under the UTPCPL the fact that Plaintiffs have plead them is immaterial and does not salvage their claim. *See Krisa v. Equitable Life Assurance Soc'y.*, 113 F. Supp. 2d 694, 706 (M.D. Pa. 2000) ("[D]amages for anxiety, emotional distress, depression and aggravation of physical illness are not recoverable under the UTPCPL."); *see also, Whiteman v. Burton Neil & Assocs., P.C.*, 2008 WL 4372842, at *3 (M.D. Pa. Sept. 19, 2008) (holding that damages for emotional distress are unavailable in UTPCPL claims).

> (i) state in conspicuous type size and format, the following: "You are not required to complete this agreement merely because you have received these disclosures or signed a loan application."; and
>
> (ii) be provided in the form of final disclosures at the time of consummation of the transaction, in the form and manner prescribed by this section.

15 U.S.C. § 1638(b)(2)(A), (B).  Plaintiffs' amended complaint asserts that neither set of disclosures were provided by Defendant to Plaintiffs.  (Amend. Compl., Doc. 33 ¶¶ 33-34.)

In its motion to dismiss, Defendant asserts that Plaintiffs' TILA claim is barred by the applicable statute of limitations because a TILA claim must be commenced within one year of the occurrence of the violation.  *See* 15 U.S.C. § 1640(e).  For their part, Plaintiffs agree that the violation occurred no later than November 2, 2007, but argue that the statute of limitations should be tolled by the discovery rule because they did not become aware of the harm until they received their July 7, 2008 mortgage statement showing an escrow shortage.

Generally, a statute of limitations begins to run when the cause of action accrues.  *Oshiver v. Levin, Fishbein Sedran & Berman*, 38 F.3d 1380, 1385 (3d Cir.1994).  In the instant case, the action would accrue at closing on November 2, 2007.  Plaintiffs did not file this action until May 4, 2009, and therefore Plaintiffs' claims are time-barred unless tolled.

The Third Circuit has held that TILA's statute of limitations is subject to equitable tolling in certain circumstances.  *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 504-505 (3d Cir.1998).  Three scenarios exist when equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff

respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Oshiver,* 38 F.3d at 1387. A party seeking tolling must also demonstrate that he or she "exercised reasonable diligence in investigating and bringing the claims." *Miller v. N.J. Dep't of Corr.*, 145 F.3d 616, 618-19 (3d Cir.1998).

Here, Plaintiffs assert that they did not receive certain disclosures required by TILA at the time of the closing, but it is unclear from their amended complaint whether the alleged injury relates to the deficiencies with their initial escrow estimate or whether some other, unidentified disclosures were not provided. This is relevant because the court cannot assess whether equitable tolling is appropriate unless sufficient facts are alleged tying Defendant's non-disclosure with Plaintiffs' eventual discovery that their escrow obligations were miscalculated. *See Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009) ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (quoting Fed. R. Civ. P. 8(a) (alterations in original).) Accordingly, the court will grant Defendant's motion to dismiss Plaintiffs' TILA claim without prejudice and will permit Plaintiffs' leave to amend in order to clarify the nature and scope of their TILA claim.

**IV.** **Conclusion**

For the reasons stated above, the court will grant Defendant's motion to dismiss Plaintiffs' amended complaint, but will grant Plaintiffs leave to file a second amended complaint to assert the application of equitable tolling to their federal Truth in Lending claim. Plaintiffs may not reassert either their tort claims or their Unfair Trade Practices Act and Consumer Protection Law claims as they are inextricable from Plaintiffs' rights arising from the mortgage contract, and are therefore barred by the gist of the action doctrine and the equitable tolling doctrine respectively. An appropriate order follows.

s/Sylvia H. Rambo
United States District Judge

Dated: April 20, 2010.

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NEIL L. SARSFIELD and
SHELLEY SARSFIELD,

            **Plaintiffs**

        **v.**

CITIMORTGAGE, INC. s/b/m to
ABN AMRO MORTGAGE GROUP,
INC.,

            **Defendant**

:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL NO. 1:09-CV-00835**

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion to dismiss Plaintiffs' amended complaint, (Doc. 36), is **GRANTED** as follows:

1) Defendant's motion is **GRANTED WITHOUT PREJUDICE** with regard to Plaintiffs' claims in Count II for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Plaintiffs are granted leave to file a second amended complaint within twenty days from the date of this order articulating a factual basis for their claim and for the application of equitable tolling to statute of limitations. If Plaintiffs do not file a second amended complaint within that time, or later if so ordered by the court, the court will dismiss this count with prejudice and close the case.

2) Defendant's motion is **GRANTED WITH PREJUDICE** as to Plaintiffs' claims for negligence (Count I), fraud (Count III), negligent misrepresentation (Count IV), and the Unfair Trade Practices and Consumer Protection Law (Count V).

    s/Sylvia H. Rambo
United States District Judge

Dated:  April 20, 2010.